**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **TPD DESIGN HOUSE, LLC** | : | |
| | : | **Case No.  26-11073 (DJB)** |
| | : | |
| **Debtor.** | : | |
| | : | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND AN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASE, (III) ALLOWING FOR THE SUBMISSION OF COMPETITIVE OFFERS AND APPROVING A BREAKUP FEE AND (IV) GRANTING RELATED RELIEF**

TPD Design House, LLC (the "Debtor"), by and through its undersigned counsel, Smith Kane Holman, LLC, hereby submits this motion for the entry of an Order (I) authorizing the sale of assets free and clear of liens, claims and encumbrances, (II) authorizing the assumption and assignment of certain executory contracts and a non-residential real property lease, (III) allowing for the submission of competitive offers and approving a breakup fee, and (IV) granting related relief  (the "Motion")[1], and, in support thereof, respectfully avers as follows:

**JURISDICTION & VENUE**

1.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are §§105, 363 and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Asset Purchase

1

## BACKGROUND

### The Chapter 11 Bankruptcy Case

2. On March 16, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of chapter 11 of the United States Code, as amended (the "Bankruptcy Code").

3. Following the Petition Date, the Debtor has remained in possession of its property and continued to manage its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4. By notice dated and filed on April 7, 2026, the Office of the United States Trustee created an official committee of unsecured creditors (the "Creditors Committee"), although the Creditors Committee has not applied to employ any professionals, including counsel, as of the date of the filing of this Motion. *See Dkt. No. 56.*

### The Debtor's Business and Operations

5. The Debtor is a creative agency specializing in brand identities, website design and development, event design and production, experiential activations, and bespoke stationery and packaging, serving clients both domestically and internationally. Much of its work is performed in-house and encompasses a broad range of services, including gifting experiences and installations, event branding and production, environmental and stage design, and the creation of digital assets such as websites, email graphics, social media content, and digital agendas, among others.

6. Pursuant to a certain Lease Agreement dated May 5, 2021 with West Wayne Avenue Ventures, LLC, as landlord (the "Lease Agreement"), the Debtor leases the entire building located at 108 West Wayne Avenue, Wayne, PA 19087 (the "Leased Premises"), which consists of

---

Agreement.

LEGAL\115085440\2 6019267/00607227

approximately 9,800 rentable square feet.  The Debtor is approximately 5 years into its initial 10-year lease term and has an option to extend the term for an additional 5 years.

7.      The Debtor conducts all of its on-site operations at the Leased Premises and, as of the Petition Date, the Debtor had 25 employees.

8.      Generally, the Debtor's tangible assets consist of office furniture and fixtures, as well as various machinery and equipment, including technology and computer-based equipment, some of which are leased and others are either owned outright or financed.  All of the aforesaid tangible assets are located at the Leased Premises, which also has leasehold improvements, although said improvements have little to no value given that they are affixed to the Leased Premises.

9.      Although the Debtor does not have any formal valuation of its tangible assets, the Debtor's equity therein is believed to be less than $100,000.00.

**The Debtor's Prepetition Liabilities**

10.     According to the Debtor's bankruptcy schedules, of the Petition Date, the Debtor had approximately $13,700,000.00 in secured debt and approximately $27,700,000.00 in unsecured debt. Notably, the vast majority of both the secured and unsecured debt is from private lenders, which did not issue regular statements to reflect receipt of payments, application of those payments and the current balance owing; accordingly, to schedule those debts, the Debtor used its best efforts by considering the original amount advanced to the Debtor, the amount sought by the lender in any litigation and/or the Debtor's belief as to what was owing to the lender based upon the extent of payments made by the lender prepetition.

11.     Of relevance to this Motion, the following creditors have filed UCC-1 financing statements against the Debtor in the following chronological order (and therefore priority), along with the described extent of each creditor's collateral:

LEGAL\115085440\2 6019267/00607227

(a)     Berkshire Bank (now Beacon Bank & Trust):  Blanket lien

(b)     Berkshire Bank (now Beacon Bank & Trust):  Blanket lien

(c)     Small Business Association: Blanket lien

(d)     CT Corporation System: Blanket lien

(e)     V-Capital LLC: Limited to accounts

(f)     CT Corporation System:  Blanket lien

(g)     HMFCG Inc.:  Blanket lien

(h)     Emmy Capital Group:  Blanket lien

(i)     Birch Event Design LLC/Joshua Emanuel: Blanket lien

(j)     Encore Enterprises, Inc.: Blanket lien

(k)     Pinkdome Corp.:  Blanket lien

(l)     Loud Equities, LLC – Blanket lien

(m)     Trail Ventures, LLC – Blanket lien

(n)     Loud Capital, LLC – Blanket lien

(o)     Dalsukh Madia – Blanket lien

(p)     South Florida Friends Investments LLC – Blanket lien

(q)     Marion 9, LLC – Blanket lien

(r)     Sunny Isles Beach Investments LLC – Blanket lien

(s)     Harkiran Kaur/Jatinder Singh – Limited to accounts

(t)     Vault 26 Capital LLC – Blanket lien

12.     The Debtor believes that the value of its assets and indeed the amount being offered for said assets by the Purchaser is insufficient to pay the Debtor's first priority secured creditor, Beacon Bank & Trust ("Beacon"), let alone any creditors holding a lien subordinate to Beacon's.

4

LEGAL\115085440\2 6019267/00607227

**The Debtor's Decision to Sell**

13.    Shortly after the filing of its bankruptcy case, the Debtor sought and obtained a Bankruptcy Court order approving its use cash collateral on an interim basis through April 28, 2026, which is the hearing date on the Debtor's further use of cash collateral. *See Dkt. No. 37.*

14.    Thereafter, the Debtor experienced cash flow shortfalls, mostly arising from the need to pay significant expenses associated with ongoing jobs as well as new work that the Debtor secured post-petition in excess of the amounts originally projected by the Debtor in its cash collateral budget.

15.    As a result, the Debtor obtained a Bankruptcy Court order on an expedited basis to obtain post-petition financing to supplement its use of cash collateral. *See Dkt. No. 74.*

16.    The Debtor's ongoing cash flow challenges, including its immediate need to pay expenses to properly fund its operations, have cast doubt on the financial viability of an outright reorganization of the Debtor's affairs, and the Debtor therefore believes that the sale of its business is in the best interests of the Debtor and its estate.

17.    Accordingly, by this Motion, the Debtor seeks to sell substantially all of its assets and to assume and assign various executory contracts and Leases, all pursuant to a certain Asset Purchase Agreement with Oslo Blue, LLC (the "Purchaser"), as the purchaser (the "APA"), a true and correct unsigned copy of which is as attached hereto and made a part hereof as Exhibit "A" (the fully executed version with exhibits will be filed supplementally), provided however, that Schedule 1.1(c) of the APA has been redacted with respect to executory customer contracts to protect proprietary information and will be disclosed by the Debtor to parties interested in entering into an Alternative Transaction (as defined in Section 5.2 of the APA) who have entered into a Non-Disclosure Agreement restricting the use of such customer information to use in

5

connection with entering into an Alternative Transaction, and/or the Official Committee of

Unsecured Creditors, its members and professionals who have entered into Non-Disclosure

Agreements prohibiting the public disclosure of such customer contract information.   Although

the terms and conditions of the proposed sale are governed by the APA, the following is a

summary of the material terms contained therein:

(a)     **Purchased Assets:**  (1) all tangible personal property; (2) all intellectual property; (3) rights under certain identified executory contracts and unexpired leases, which will include the Lease Agreement; (4) authorizations issued to, or required to be obtained or maintained by the Debtor from any governmental body; (5) customer deposits; (6) avoidance actions under chapter 5 of the Bankruptcy Code against identified vendors or counterparties to assigned leases or contracts with whom the Purchaser continues to do business (7) rights under non-disclosure, confidentiality or similar agreement relating to the Debtor's sale of its assets; and (8) all books and records.

(b)     **Purchase Price:**  (1)  Payment of $700,000; (2) payment of an additional $50,000 if closing does not occur by May 15, 2026; (3) payment of an additional $50,000 if closing does not occur by June 15, 2026; and (4) an amount up to $315,000 to the extent that the Debtor has or will collect its accounts receivables that existed as of the Petition Date.

(c)     **DIP Loan:**  since the Purchaser also is the Debtor's post-petition lender as authorized by the Bankruptcy Court, the Purchaser reserves the right to waive the Debtor's obligation to repay the post-petition advances on loans made by the Purchaser or any portion thereof (with interest, if any) as additional consideration towards the purchase price.

(d)     **Employment of Debtor's Principal**:  although as of the date of the filing of this Motion there has been no employment arrangement agreed to by the Purchaser and Vanessa Kreckel, the Debtor's principal, the Purchaser has required a mutually agreeable employment agreement as a condition precedent to the effectiveness of the APA.  If such an agreement is reached, the agreement or, as applicable, the terms thereof will be disclosed to the Bankruptcy Court and all parties entitled to notice.

18.     The Debtor intends to seek approval of said sale, as more fully set forth herein, at

the hearing on the Motion (the "Sale Hearing").

**THE BASIS FOR RELIEF AND THE REASONS THEREFOR**

LEGAL\115085440\2 6019267/00607227

19.    By this Motion, the Debtor seeks an order to be entered immediately following the Sale Hearing, pursuant to sections 363 and 365 of the Bankruptcy Code approving the sale of the Purchased Assets (as identified in the APA) free and clear of liens, claims, encumbrances and interests, authorizing the assumption and assignment of certain designated Assigned Contracts/Leases and permitting competitive bids and payment of a Break-Up Fee of $24,500 (as identified in the APA), approving the right of the Purchaser to include the waiver of the unpaid portion of any Bankruptcy Court approved loan made by the Purchaser to Seller as part of the consideration for the Purchaser's purchase of the Purchased Assets (the "Sale Approval Order").

20.    The Sale Approval Order requested by the Debtor, as well as the reasons and authority for the entry thereof, are discussed in detail below.

**The Legal Basis to Sell**

21.    The Debtor seeks the entry of the Sale Approval Order pursuant to section 363 of the Bankruptcy Code, approving the sale of the Purchased Assets, free and clear of any and all liens, claims, encumbrances and interests in or on the Purchased Assets.

22.    Pursuant to section 541 of the Bankruptcy Code, the property to be sold (i.e., the Purchased Assets) consists of assets of the Debtor's bankruptcy estate.

23.    In accordance with Sections 363, 1107 and 1108 of the Bankruptcy Code, debtors-in-possession are authorized to sell property of the estate and maximize recoveries for their creditors.

24.    Section 363(b)(1) of the Bankruptcy Code authorizes a debtor or a trustee to sell its assets outside of the ordinary course of business.

25.    A proposed sale of property pursuant to Section 363(b) of the Bankruptcy Code is proper if the bankruptcy court finds that the Debtor has exercised its reasonable business

LEGAL\115085440\2 6019267/00607227

judgment.  See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983).

26.     The business judgment test involves four factors: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided.  Id. at 1071.

**(i)      The Sale Is In the Debtor's Sound Business Judgment**

27.     Based upon an analysis of its operations, the Debtor believes that it cannot reorganize due to its inability to adequately fund operations, let alone generate sufficient cash to propose an acceptable plan of reorganization for the benefit of its creditors.

28.     The Debtor believes a sale of all or substantially all of its assets to a single third-party purchaser that permits such purchaser to continue the business as a going concern will generate the greatest value for creditors both through the reduction of the Debtor's secured indebtedness as well as the elimination of debts, many of which have a priority over general unsecured creditors.

29.     First, the Debtor believes that the consideration offered by the Purchaser is in excess of the expected value of the assets, thereby maximizing the return to the Debtor's estate through the reduction of secured debt as aggressively as possible.

30.     Relatedly, the Debtor has not sought to implement formal bidding procedures due to the exigencies of the sale process as well as the belief that the third party interest will be minimal given that the Debtor's is a pure service business with existing or future clients that engage the Debtor on a project-by-project basis—i.e., clients are not under contract that commits them to use the Debtor for any future projects, if at all in the future.

LEGAL\115085440\2 6019267/00607227

31. Nevertheless, the Debtor will notify all parties in interest of this Motion as well as any parties that the Debtor expects might have an interest in purchasing the Purchased Assets on terms better than those offered by the Purchaser. The Motion affords any third parties to participate in the purchase of the Purchased Assets at terms better than those offered by the Purchaser.

32. Second, the proposed sale to the Purchaser will result in the reduction or elimination of the following claims, many of which have priority over the claims of general unsecured creditors:

(a) If the Lease Agreement of the Leased Premises is assumed and assigned to the Purchaser, it will result in the payment of substantial prepetition arrears thereunder to the landlord and the loan by Purchaser will have also resulted in payment of post-petition rent and CAM in the approximate monthly amount of $34,000.00 starting in April of 2026 to have been made.

(b) Similarly, the intended assumption and assignment of various executory contracts, although not yet identified nor quantified, will address both prepetition arrears as well as any unpaid post-petition accruals.

(c) The continuation of operations by the Purchaser will likely result in continuing relationships with the Debtor's vendors, thereby giving rise to the possibility that their claims will be addressed by the Purchaser.

(d) The combined cash consideration for the Purchased Assets and collection of the Debtor's accounts receivable will result in the reduction of the Beacon secured claim by at least $1,015,000.00 and as much as $100,000.00 more depending upon the timing of the sale.

33. In addition, it is expected that the Purchaser will hire all of the Debtor's twenty-five (25) existing employees, thereby ensuring that there are no unpaid wages or benefits post-petition.

**(ii)     The Consideration Offered Is Fair And Reasonable**

34. The Debtor believes the Purchaser has the financial resources and commitment to close on the sale and meet all its obligations under the APA, as well as the capital resources to

9

operate the business prospectively.  Importantly, the Debtor believes that the consideration being offered by the Purchaser is at or above market price for the Purchased Assets.

35.    In addition, while the Debtor is not proposing any formal bid procedures, the sale is subject to alternative competing bids, thereby creating a mechanism to solicit higher and better offers for the Purchased Assets.  Expanding the sale process, if applicable and effectuated, to include other offers will ensure the fairness and reasonableness of the consideration to be received by the Debtor.

### (iii)    The Agreement was Negotiated in Good Faith

36.    The parties to the Agreement have spent considerable time in negotiating the terms and conditions of the Agreement.  Each of the Debtor and the Purchaser has been represented by legal counsel in connection with this process and have conducted extensive arm's length negotiations.

37.    The Debtor has fully disclosed and requested the Court's approval of all of the terms and conditions of the proposed sale.

38.    Although the Debtor has disclosed its relationship with the Purchaser in its post-petition financing filings, the Debtor wishes to again state the following:

    (a)    The Purchaser is a Delaware limited liability company whose sole member is Scott Tarte.

    (b)    Mr. Tarte is not and has never been an owner, officer, manager, director or employee of the Debtor.

    (c)    Mr. Tarte is a current client of the Debtor, which is providing wedding-related services to him or for his benefit, the costs of which have been paid in full by Mr. Tarte.

    (d)    Mr. Tarte's daughter is an employee of the Debtor.

LEGAL\115085440\2 6019267/00607227

39.     Other than as disclosed above, neither the Purchaser nor Mr. Tarte has any connections with the Debtor, and neither he nor any party in which he has an interest (including the Purchaser) is a creditor of the Debtor.  Nevertheless, Mr. Tarte could be a creditor if and to the extent that the Debtor is unable to complete the project for which it has been engaged and paid in full.

40.     By way of further disclosure, in connection with the post-petition financing by the Purchaser, Mr. Tarte's son, Evan Tarte, has assisted in the creation of cash flow projections, which were and are necessary to determine the extent of the Debtor's cash needs and therefore the amount that would be funded by the DIP loan facility.

### (iv)     Adequate Notice Of The Asset Sale Is Being Provided

41.     The Debtor intends to provide notice of the proposed transaction by mailing a copy of this Motion (with the Exhibits) and the proposed order to (i) the Office of the United States Trustee, (ii) counsel to the Creditors' Committee; (iii) *all* creditors of the Debtor, (iv) counsel for the Purchaser, (v) all entities known to have expressed an interest in an acquisition of the Debtor or any substantial portion of the Purchased Assets within the last twelve (12) months, (vi) all federal, state and local regulatory or taxing authorities or recording offices with a known interest in the relief requested by this Motion, and (vii) all parties to executory contracts and unexpired leases with the Debtor (including counsel to the landlord).

42.     The Debtor believes that, under the circumstances, such notice is reasonable and appropriate pursuant to Rule 2002(i) because it will enable the Debtor to comply with the deadlines set forth in the Agreement and it will enable the Debtor to sell the Purchased Assets

LEGAL\115085440\2 6019267/00607227

promptly.  The Debtor submits that this notice is sufficient and satisfies the requirements of the

business purpose test.

## The Sale Complies With the Bankruptcy Code

43.    Section 363(f) of the Bankruptcy Code states,

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

44.    Because Section 363(f) is in the disjunctive, if the Debtor meets any one of the

foregoing criteria, a sale free and clear of all liens, claims or interests is proper.

45.    Although the Debtor reserves the right to seek approval of the Motion under any

applicable Section of 363(f), at the very least, Section 363(f)(5) is satisfied.

46.    Here, Beacon, which the Debtor believes is owed at least $4,300,000.00 in the

aggregate, holds a first and second priority security interest in the Purchased Assets.

47.    If Beacon were to conduct a sale of the Purchased Assets pursuant to its rights

under PA UCC § 9-610, the proceeds therefrom are distributable to secured creditors based upon

their relative priority pursuant to PA UCC § 9-615, and any the lien of any such junior secured

creditor which is not paid from the sale is divested pursuant to PA UCC § 9-617.

LEGAL\115085440\2 6019267/00607227

48.     As a result, all secured creditors junior to Beacon can be compelled in the context of a UCC sale by Beacon to accept a money satisfaction of their respective interests. Thus, Bankruptcy Code Section 363(f)(5) constitutes a basis to sell the Purchased Assets free and clear of any interest.

49.     In addition, to the extent that all secured creditors with liens subordinate or inferior to Beacon's liens consent or are deemed to have consented to such a sale, then Bankruptcy Code Section 363(f)(2) has been satisfied.

**Good Faith Purchaser**

50.     The Debtor submits that the proposed sale to the Purchaser constitutes a sale in good faith and for fair value within meaning of Section 363 of the Bankruptcy Code and, specifically, should be afforded the benefits and protections provided by Bankruptcy Code Section 363(m) of the Bankruptcy Code.

51.     Although the Bankruptcy Code does not define "good faith," the Third Circuit has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'" In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986).

52.     Further, the Third Circuit has recognized that the type of misconduct that would destroy a purchaser's good faith status involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.' Id.

53.     As stated *supra*, the terms and conditions of the sale have been negotiated at arm's length with each side having their own legal counsel. In addition, the Debtor has disclosed all connections with the Purchaser and its principal, none of which taints or in any way negatively affects or impacts the good faith nature of the sale transaction.

**Sale Free and Clear of Successor Liability**

13

LEGAL\115085440\2 6019267/00607227

54.     The Purchaser is not interested in purchasing the Purchased Assets without an order stating that the Purchaser is not liable under any theory of successor liability for claims or interests of the Debtor, including, without limitation, those that encumber or relate to the Purchased Assets.

55.     The Debtor believes that such a request by the Purchaser or, for that matter, any other party who successfully purchases the Purchased Assets is reasonable and consistent with the authority and willingness of bankruptcy courts to grant such relief.

**Assumption and Assignment of Certain Executory Contracts and the Lease Agreement**

56.     The Debtor respectfully requests authorization to assume and assign certain executory contracts and leases that the Purchaser designates for assumption and assignment and are set forth in Schedule 1.1(c) to the APA, as amended (all collectively referred to in the APA as the "Assigned Contracts/Leases"), in connection with this sale transaction.

57.      In connection with any such assumption by the Debtor and assignment to the Purchaser, the Purchaser shall assume and perform after the closing of the sale any and all obligations and liabilities under the Assigned Contracts/Leases, including the obligation to pay the amounts needed to effect a cure of any arrearages thereunder.

58.     The Purchaser shall provide to the counterparties to the Assigned Contracts/Lease ("Counterparties") such adequate assurance of its future performance under the Assigned Contracts/Leases as may be required pursuant to section 365 of the Bankruptcy Code and/or any applicable order of the Bankruptcy Court.

LEGAL\115085440\2 6019267/00607227

59.     The Debtor proposes providing written notice of the Motion seeking entry of the Sale Order to all Counterparties, and take all other actions necessary or required to cause the Assigned Contracts/Leases to be assumed by the Debtor and assigned to the Purchaser pursuant to Section 365 of the Bankruptcy Code, including without limitation: (i) serving on each Counterparty and potential Counterparty a notice specifically stating that the Debtor is or may be seeking the assumption and assignment of that party's executory contract(s) and/or unexpired lease(s), identifying such executory contract(s) and/or unexpired lease(s), and providing the applicable Cure Amount(s) or otherwise in the Seller's records, and (ii) as promptly as possible, shall provide notice to the Counterparties of the deadline set by the Bankruptcy Court for objecting to the Cure Amount(s) or any other aspect of the proposed assumption and assignment to the Purchaser; and (iii) taking, as promptly as possible, all other actions reasonably requested by the Purchaser to facilitate any negotiations with the Counterparties in order to satisfy all applicable requirements of Section 365 of the Bankruptcy Code.

60.     The Purchaser shall have the right to update Schedule 1.1(c) of the APA from time to time by providing written notification to the Debtor, up to one (1) business day prior to Closing (as defined in the APA), of: (i) any executory contracts and/or unexpired leases that Purchaser wishes to add as Assigned Contracts/Leases; and (ii) of any Assigned Contracts/Leases that Purchaser no longer wishes to have assumed and assigned to it, and any such Assigned Contracts/Leases shall be deemed removed from Schedule 1.1(c) and no longer considered Assigned Contracts/Leases.  Any such added executory contract or unexpired lease shall be deemed added to Schedule 1.1(c), shall be deemed to be an Assigned Contract/Lease, and shall be assumed by the Debtor and assigned to Purchaser without any adjustment to the Purchase Price.

LEGAL\115085440\2 6019267/00607227

**Compliance With and Relief Under Rules 6004 and 6006**

61.     The Debtor believes that this Motion and the relief requested herein is or will be compliant with Bankruptcy Rules 6004 (involving sale of property) and 6006 (involving assuming and assigning contracts and leases), as applicable.

62.     The Debtor has set forth herein and will demonstrate at the hearing on the Motion, the potential harm of any delay in the sale process and the consummation of the sale.

63.     Accordingly, the Debtor requests a waiver of the stay as provided under Rule 6004(h) and 6006(d) to allow for a closing within the fourteen (14) day period referenced in those respective Bankruptcy Rules.

**Bidding Procedures (If Needed)**

64.     As stated above, the Debtor has not sought to implement formal bidding procedures due to the exigencies of the sale process as well as the belief that the third party interest will be minimal given that the Debtor's is a pure service business with existing or future clients that engage the Debtor on a project-by-project basis—i.e., clients are generally not under a forward looking contract that commits them to use the Debtor for any future projects, it at all in the future.

65.     Nevertheless, the Debtor will notify **all** parties in interest of this Motion as well as any parties that the Debtor expects might have an interest in purchasing the Purchased Assets on terms better than those offered by the Purchaser.

66.     Any party who is interested in purchasing the Purchased Assets can submit an agreement in a form substantially similar to the form of the APA, with changes redlined against the Purchaser's form of APA, provided that the purchase price must be at least $50,000 greater than consideration offered by the Purchaser pursuant to the APA.  Since the Purchaser's

LEGAL\115085440\2 6019267/00607227

consideration may include a waiver of any unpaid portion of the Purchaser's post-petition loan to the Debtor, any party interested in purchasing the Purchased Assets should contact Debtor's counsel to confirm the total consideration being offered by the Purchaser for purposes of calculating the overbid amount.

67.    In the event that there is a successful overbid as aforesaid, then the Purchaser shall be paid the sum of $29,500.00 from the sale proceeds as a "break-up fee."

**WHEREFORE,** the Debtor respectfully requests that this Court (i) enter an Order approving the sale of the Purchased Assets, free and clear of liens, claims, encumbrances and interest, (ii) authorizing the assumption and assignment to Purchaser of the Assigned Contracts/Leases, and (iii) grant such other and further relief as requested in this Motion as this Court deems just and proper.

SMITH KANE HOLMAN, LLC

Dated:  April 27, 2026

By:*/s/ David B. Smith*
David B. Smith, Esquire
112 Moores Road
Suite 300
Malvern, PA 19355
*Attorneys for the Debtor and*
*Debtor-in-Possession*

17