**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| TPD Design House, LLC | : | Case No. 26-11073 (DJB) |
| | : | |
| Debtor. | : | |
| | : | |

## ORDER

AND NOW, this ___ day of May, 2026, upon consideration of the DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO: (I) OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 364 AND 363 OF THE BANKRUPTCY CODE, (II) GRANTING THE LENDER A CLAIM WITH PRIORITY STATUS OVER ANY AND ALL ADMINISTRATIVE EXPENSES PURSUANT TO SECTION 364(c)(1) OF THE BANKRUPTCY CODE, (III) MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE FINANCING TERMS; AND (IV) FOR EXPEDITED CONSIDERATION THEREOF PURSUANT TO LOCAL BANKRUPTCY RULE 5070-1(G) (the "Motion") (capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion), and based upon an evidentiary hearing conducted on April 15, 2026, the Court having considered both the Motion and the exhibits attached thereto, including the Declaration and testimony of Vanessa Kreckel at said hearing, and any objections thereto; and it appearing that the Court has jurisdiction over this mater pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. §157(b)(2); and it appearing that the Motion is in the best interests

184797897.2

of the Debtor; its estate, and its creditors; and adequate notice of the Motion having been given; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefore, it is hereby **ORDERED:**

1.  In accordance with Bankruptcy Rule 4001(c)(2), the Court finds that to avoid immediate and irreparable harm to the Debtor's estate, this Order shall constitute a second interim order **GRANTING** the Motion on an interim basis to the extent provided herein.

2.  Through the date of the hearing set forth below, the Debtor is authorized and empowered to immediately borrow and incur indebtedness from the Lender pursuant to the Loan up to the maximum aggregate principal amount set forth in the Projections attached hereto and incorporated herein by reference as Exhibit A (the "Interim Loan").

3.  The following Interim Loan terms are hereby approved and shall govern the Interim Loan in lieu of any loan documents between the Lender and Debtor:

> (a) The Interim Loan will accrue interest at the minimum amount, if any, required under applicable law.
>
> (b) The Debtor has no obligation to make principal or interest payments towards the Interim Loan during the pendency of its bankruptcy case, but the Interim Loan is payable upon the Maturity Event—i.e., upon the earlier of a sale or transfer of the Debtor's assets, conversion of the case to a case under chapter 7 or dismissal of the case.
>
> (c) Pursuant to Bankruptcy Code Section 364(c)(1), and subject to the Carve-Out (as defined below), the Interim Loan shall be an extension of credit with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) and 507(b); provided, however, that, for the avoidance of doubt, the Carve-Out shall not be subject to such superpriority administrative expense claim.
>
> (d) The Lender reserves the right to include the unpaid portion of its Interim

184797897.2

Loan as partial consideration towards an anticipated offer by the Lender (or an affiliated entity) to purchase substantially all of the Debtor's assets.  If the Lender does not purchase substantially all of the Debtor's assets, the Lender reserves any and all rights to enforce its Section 364(c)(1) claim.

(e) Interim Loan advances will be at the unfettered discretion of the Lender and may be used by the Debtor for the needs set forth in the Projections, including Professional fees of the Debtor and the Creditor's Committee upon the respective professional's compliance with Local Rule 2016-5.

(f) As used in this Order, the "Carve-Out" shall mean (i) fees payable to the United States Trustee under 28 U.S.C. § 1930; and (ii) the allowed, reasonable, and unpaid fees, costs, and disbursements incurred by professionals retained by the official committee of unsecured creditors appointed in this case (the "Committee Professionals") pursuant to sections 327, 328, or 1103 of the Bankruptcy Code, that are allowed by the Court pursuant to sections 328, 330, or 331 of the Bankruptcy Code, in an aggregate amount not to exceed $60,000.

(g) For the avoidance of doubt, the Lender's Section 364(c)(1) superpriority administrative expense claim shall be subject and subordinate to the payment of the Carve-Out and shall not extend to, attach to, or have recourse against the Carve-Out.

(h) Nothing in this Order shall be deemed to constitute a cap or limitation on the amount of fees and expenses that Committee Professionals may seek, assert, or be allowed as administrative expense claims under the Bankruptcy Code. The Carve-Out shall not be deemed to limit the right of any Committee Professional to assert claims for compensation and reimbursement of expenses as administrative expenses of the Debtor's estate.

4.      The Debtor shall deliver to counsel to the Creditors Committee and the United States Trustee, a report (the "Variance Report") setting forth the Debtor's actual receipts and disbursements for the prior budget week as compared to the corresponding amounts set forth in the Projections attached hereto as Exhibit "A," together with an explanation of any material variances. The variance report will show the variance in

184797897.2

the summary items Cash Income, Cash Payroll Expenses, Total Cash Operating Expenses, Critical Vendor Payments, and Reorganization Expenses.  Line item detail will also be provided for critical vendor payments. Each Variance Report shall be delivered no later than the Friday immediately following the conclusion of the applicable budget week. For purposes of this provision, a "material variance" shall mean any line-item variance exceeding twenty percent (20%) of the budgeted amount for such line item.

5.      Pursuant to Bankruptcy Code Section 364(e), to the extent that the Interim Loan is extended in good faith, this Order shall not be affected by any subsequent reversal or modification on appeal.

6.      To the extent necessary to implement this Order and/or the terms of the Interim Loan, the stay pursuant to Bankruptcy Code Section 362(a) is hereby modified.

7.      The 14-day stay pursuant to Bankruptcy Rule 6004(h) is hereby waived, and this Order is immediately enforceable.

8.      A copy of this Order shall be served by the Debtor or its counsel upon the parties required to be served under in accordance with Bankruptcy Rule 4001(c)(1)(C) and Local Rules 1002-2(d) and 9014-3, as applicable.  This notice shall be sufficient and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

9.      Any objections to the Motion shall be filed with the Court and served upon counsel to the Debtor, David B. Smith, Esquire, Smith Kane Holman, LLC, 112 Moores Road, Suite 300, Malvern, PA 19355 (dsmith@skhlaw.com) no later than May 27, 2026.

184797897.2

10.      A further or final hearing in accordance with Federal Rule of Bankruptcy Procedure 4001(c)(2) to consider the Debtor's use of Cash Collateral shall be heard at 1:30 p.m.  on May 28, 2026.   Parties may participate by zoom audio technology accessible via www.zoomgov.com/join, or by dialing 1-646-828-7666 (Meeting ID: 161 0657 4791).  In the event that no objections are timely filed and served in accordance with this Interim Order, the Court may enter an order granting the Motion as a final order without further notice or further hearing.

11.      This Court shall retain jurisdiction over any and all matters arising from or related to this Interim Order.

SO ORDERED by this Court this __ day of May, 2026.

**Dated:  May 6, 2026**

_____
Derek J. Baker
United States Bankruptcy Judge

184797897.2

## Exhibit A – Budget/Projections

# TPD Design House 9 Week Budget (REVISED)

*4/27/2026*

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| **Week** | | | | | | | | | | |
| Beginning | 4/5/2026 | 4/12/2026 | 4/19/2026 | 4/26/2026 | 5/3/2026 | 5/10/2026 | 5/17/2026 | 5/24/2026 | 5/31/2026 | |
| Ending | 4/11/2026 | 4/18/2026 | 4/25/2026 | 5/2/2026 | 5/9/2026 | 5/16/2026 | 5/23/2026 | 5/30/2026 | 6/6/2026 | |
| ***Accounts Receivable Conversion*** | | | | | | | | | | |
| **Cash Income** | - | 29,500 | 252,526 | 159,750 | 130,770 | 366,300 | 141,750 | 256,770 | 193,500 | 1,530,866 |

*Explaination for Changes:* *Cash receivables have been revised based on the latest accounts receivable data. Cash conversion was below budget in weeks 2 and 3 (shortfalls of $28.5k and $42.5k, respectively). Despite this shortfall due to payment timing considerations, aggregate Cash Income for the Budget period increased $338k because TPD has better visibility into the timing of installment payments as work is completed and deliverable dates get closer. To a lesser extent, TPD won some new business and a few smaller projects were overlooked in the previous analysis.*

| ***Payroll Expenses*** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Payroll PEO (Includes Processing Fee, Taxes) | (81,182) | - | (81,182) | - | (81,182) | - | (81,182) | - | (81,182) | (405,910) |
| Benefits Invoice | (14,711) | - | - | - | (14,711) | - | - | - | (14,711) | (44,133) |
| Retention Bonus for Late Payroll | - | (13,000) | - | - | - | - | - | - | - | (13,000) |
| Vanessa Compensation | - | - | (5,000) | - | (5,000) | - | (5,000) | - | (5,000) | |
| **Cash Payroll Expenses** | **(95,893)** | **(13,000)** | **(86,182)** | **-** | **(100,893)** | **-** | **(86,182)** | **-** | **(100,893)** | **(483,043)** |
| ***Other Operating Expenses*** | | | | | | | | | | |
| Rent or Lease + CAM Charges Combined | - | (34,159) | (34,159) | - | - | - | - | (34,159) | - | (102,477) |
| Cost of Goods for Active Projects | (21,000) | (70,000) | (38,000) | (35,000) | (35,000) | (35,000) | (35,000) | (35,000) | - | (304,000) |
| Cost of Goods for Specialty Project | - | - | - | - | - | - | - | (100,000) | - | (100,000) |
| Equipment Lease Vendor 1 | - | (1,771) | - | - | - | (1,771) | - | - | - | (3,542) |
| Equipment Lease Vendor 2 | - | - | (976) | - | - | - | - | (976) | - | (1,951) |
| Insurance Expense - Business Insurance | (3,382) | - | - | - | (3,382) | - | - | - | - | (6,763) |
| Software / Subscriptions Total | (1,653) | (1,653) | (9,933) | (1,653) | (1,653) | (1,653) | (1,653) | (9,933) | - | (29,785) |
| Bookkeeping Fees | (1,759) | - | (1,700) | - | - | - | - | - | - | (3,459) |
| Accounting Fees (New Accounting) | - | - | (10,000) | - | - | - | - | (5,000) | - | (15,000) |
| Utilities, Telephone, & Office | (26,835) | (1,328) | (8,820) | (450) | (5,450) | (1,328) | (450) | (8,820) | - | (53,481) |
| Shipping Expense | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | - | (80,000) |
| Printing + Reproduction | (23,000) | (27,000) | (39,978) | (26,798) | (26,798) | (26,798) | (26,798) | (26,798) | - | (223,968) |
| Airfare | (9,000) | - | - | - | - | - | - | - | - | (9,000) |
| Speciality Vendors | (46,900) | - | (24,000) | - | (50,000) | (35,000) | - | - | - | (155,900) |
| Other | (36,594) | (6,549) | (36,996) | (27,547) | (27,547) | (27,547) | (27,547) | (27,547) | - | (217,876) |
| **Total Cash Operating Expenses** | **(180,123)** | **(152,460)** | **(214,562)** | **(101,448)** | **(159,830)** | **(139,097)** | **(101,448)** | **(258,233)** | | **(1,307,202)** |

*Explaination for Changes:* *Expense forecasting has also been revised based on the latest data. In weeks 2 and 3, expenses exceeded prior budget by $44k and $61k, respectively. The largest sources of variance were greater project-related costs, including costs related to newly won projects (~$40k), line-items not previously accounted for (~40k), and faster time frames for certain vendor payments (~$20k). Total Cash Operating expenses increased by $394,000 over prior budget due to new assumptions to account for the upfront costs associated with newly won mandates and previously missed delivery-related line-items. COGS for Active Projects was also revised upward. This line item was underestimated previously and can vary radically week-to-week depending upon the nature of the projects in pipeline.*

## TPD Design House 9 Week Budget (REVISED)

*4/27/2026*

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning | 4/5/2026 | 4/12/2026 | 4/19/2026 | 4/26/2026 | 5/3/2026 | 5/10/2026 | 5/17/2026 | 5/24/2026 | 5/31/2026 | **TOTAL** |
| Ending | 4/11/2026 | 4/18/2026 | 4/25/2026 | 5/2/2026 | 5/9/2026 | 5/16/2026 | 5/23/2026 | 5/30/2026 | 6/6/2026 | |
| *Critical Vendor Payments* | | | | | | | | | | |
| Critical Vendor 1 | (11,500) | (11,500) | - | (23,000) | (11,500) | (11,500) | (11,500) | (11,500) | (11,500) | (103,500) |
| Critical Vendor 2 | (36,000) | (21,000) | - | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (117,000) |
| Critical Vendor 3 | - | (20,000) | - | (10,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (55,000) |
| Critical Vendor 4 | - | - | - | - | - | - | - | - | - | - |
| Critical Vendor 5 | - | (71,120) | - | - | - | - | - | (71,120) | - | (142,240) |
| Critical Vendor 6 | - | (97,819) | - | - | - | - | - | (97,819) | - | (195,637) |
| **Total Critical Vendor Payments** | **(47,500)** | **(221,439)** | **-** | **(43,000)** | **(26,500)** | **(26,500)** | **(26,500)** | **(195,439)** | **(26,500)** | **(613,377)** |

*Explaination for Changes:* Due to a cash shortfall in week 3, the Company had to push installment payments for Critical Vendors 1 and 2 to this week (once further DIP financing is approved). Vendors 2 and 3 have been aggressive about arrears and require the above payment schedule to continue work. With respect to Critical Vendor 2, TPD reached a deal requiring further installment payments to reduce the balance. With respect to Critical Vendor 3, those installment payments were previously reflected within ordinary operating expenses and thus bucketed incorrectly. That categorization issue has been fixed. Despite the noted increase, TPD has been aggressive about minimizing payments for pre-petition vendor arrears.

| *Reorganization Expenses* | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| US Trustee QUARTERLY FEES | - | - | (10,500) | - | - | - | - | - | - | (10,500) |
| SKH Law Professional Fees | - | - | (10,500) | - | - | - | - | (24,000) | - | (34,500) |
| Creditor Committee Professional Fees | - | - | - | - | - | - | - | (20,000) | - | (20,000) |
| **Total Cash Reorganization Expenses** | **-** | **-** | **(21,000)** | **-** | **-** | **-** | **-** | **(44,000)** | | **(65,000)** |
| | | | | | | | | | | |
| **Cash Income** | | 29,500 | 252,526 | 159,750 | 130,770 | 366,300 | 141,750 | 256,770 | 193,500 | 1,530,866 |
| **Cash Expenses** | | (414,561) | (238,642) | (278,562) | (228,841) | (186,330) | (251,779) | (296,887) | (429,626) | (2,325,229) |
| **Change in Cash** | | **(385,061)** | **13,884** | **(118,812)** | **(98,071)** | **179,970** | **(110,029)** | **(40,117)** | **(236,126)** | **(794,363)** |
| | | | | | | | | | | |
| *Cash Balance* | | | | | | | | | | |
| Beginning Balance | 10,000 | 30,000 | 40,536 | 54,420 | 30,000 | 30,000 | 209,970 | 99,941 | 59,824 | 10,000 |
| Change in Cash(1)(2) | (111,893) | (385,061) | 13,884 | (118,812) | (98,071) | 179,970 | (110,029) | (40,117) | (236,126) | (906,256) |
| DIP Facility | 131,893 | 395,597 | - | 94,392 | 98,071 | - | - | - | 206,303 | 926,256 |
| **Ending Balance** | **30,000** | **40,536** | **54,420** | **30,000** | **30,000** | **209,970** | **99,941** | **59,824** | **30,000** | **30,000** |
| | | | | | | | | | | |
| *DIP Facility* | | | | | | | | | | |
| Beginning Balance | - | 131,893 | 527,490 | 527,490 | 621,882 | 719,953 | 719,953 | 719,953 | 719,953 | - |
| Draw | 131,893 | 395,597 | - | 94,392 | 98,071 | - | - | - | 206,303 | 926,256 |
| **Ending Balance** | **131,893** | **527,490** | **527,490** | **621,882** | **719,953** | **719,953** | **719,953** | **719,953** | **926,256** | **926,256** |

*(1) Installment in week 1 made primarily to ensure payroll*

*(2) Overage of $17.5k ($527.5k drawn vs. $510.0k approved) due to lower cash collections and higher expenses during budget period. Explainations for variance noted above.*