## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") dated April 27, 2026, is entered into by and between TPD Design House, LLC, as debtor and debtor-in-possession (the "Seller") in the bankruptcy case pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") at case no. 26-11073-DJB (the "Bankruptcy Case"), on the one hand, and Oslo Blue, LLC, or its designee, (the "Purchaser"), on the other hand. The Purchaser and the Seller are each referred to in this Agreement as a "Party" and together as, the "Parties."

**WHEREAS**, the Seller is a creative agency specializing in brand identities, website design and development, event design and production, experiential activations, and bespoke stationery and packaging, serving a broad base of corporate and individual clients both domestically and internationally, performing much of its work in-house encompassing a broad range of services, including gifting experiences and installations, event branding and production, environmental and stage design, and the creation of digital assets including websites, email graphics, social media content, and digital agendas (the "Business");

**WHEREAS**, on March 16, 2026 (the "Petition Date"), the Seller filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the Bankruptcy Court, commencing the Bankruptcy Case, and is operating its Business as a debtor-in-possession pursuant to section 1107 of the Bankruptcy Code;

**WHEREAS**, the Seller intends to file with the Bankruptcy Court a sale motion pursuant to 11 U.S.C. § 363 which proposes a sale of substantially all assets of the Seller's bankruptcy estate related to, used, and/or held for use in connection with the Business, pursuant to a public sale process (the "Sale Motion");

**WHEREAS** the Parties have agreed that the Seller shall sell to the Purchaser the assets identified in this Agreement pursuant to the terms of this Agreement (the "Sale"), subject to the entry by the Bankruptcy Court of an order approving the Sale pursuant to this Agreement in form reasonably satisfactory to Purchaser (the "Sale Order"), on an "as-is, where-is" basis, free and clear of all liens, claims, interests, and encumbrances to the fullest extent permitted under the Bankruptcy Code and otherwise applicable law with such liens, claims, interests and encumbrances attaching to the proceeds of sale in the same priority as existed prior to the sale;

**WHEREAS**, capitalized terms used in this Agreement without definition shall have the meanings given to those terms in the Sale Motion and/or the Sale Order; and

**WHEREAS**, the Sale Motion will be scheduled for hearing on a date to be determined by the Bankruptcy Court (the "Sale Hearing").

**NOW, THEREFORE**, pursuant to the foregoing recitals, which are an integral part hereof, and in consideration of the mutual covenants contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## Article 1

### Purchase and Sale of Assets

1.1   Purchased Assets. On the terms and subject to the conditions of this Agreement, the Seller hereby sells, conveys, transfers, and delivers to the Purchaser, and the Purchaser hereby purchases from the Seller, free and clear of any and all claims, liens, and/or encumbrances, pursuant to Section 363 of the

Bankruptcy Code and the Sale Order, all of the assets, rights, claims, privileges, and interests owned by the Seller as of the Closing (as defined below), of every kind and character and wherever located, except for the Excluded Assets (as defined below), related to, used, held for use in connection with, and/or comprising the Business (collectively, the "Purchased Assets"). Without limiting the generality of the foregoing, the Purchased Assets include all of the Seller's right, title, and interest in and to the following:

(a)       All of the Seller's tangible personal property, including without limitation, leasehold improvements, furniture, and equipment, related to, used, held for use in connection with, and/or comprising the Business.

(b)       All intellectual property, including but not limited to all patents, copyrights, trademarks and any goodwill in any marks, know how, trade secrets, customer lists, product lists with customer-specific pricing, and all engineering drawings, and the right to sue for any past or future infringement, misappropriation, or disclosure of any rights in such intellectual property.

(c)       The Seller's rights under the executory contracts and/or unexpired leases listed on Schedule 1.1(c) attached hereto, including all extensions, renewals, amendments, and option rights thereunder (the "Assigned Contracts/Leases").

(d)       To the extent not already included in this subsection 1.1, and to the extent existing and valid as of Closing and transferable under applicable law, all permits, licenses, franchises, approvals, certificates, consents, waivers, concessions, exemptions, orders, registrations, notices or other authorizations issued to, or required to be obtained or maintained by, the Seller by any governmental body, entity, or authority with respect to the use of the Purchased Assets, and all pending applications therefor and amendments, modifications, and renewals thereof.

(e)       The Seller's cash, to the extent that it constitutes deposits paid by the Seller's customers ("Customer Deposits").

(f)       All avoidance actions under Chapter 5 of the Bankruptcy code related to the Purchased Assets, Assumed Liabilities, and/or the Business, including without limitation all such actions that may exist against those of the Debtor's vendors with whom the Purchaser continues to do business (as set forth on Schedule 1.1(f)), and/or the Counterparties (as defined below) to Assigned Contracts/Leases (the "Preference Actions").

(g)       The Seller's rights under non-disclosure, confidentiality, or similar agreements with third parties entered into in connection with or in contemplation of such third parties performing due diligence in preparation to bid, or potentially bid, on all or some of the Debtor's assets in any sale process in the Bankruptcy Case.

(h)       All books and records related to the Business and/or the Purchased Assets (the "Included Books and Records").

1.2       Excluded Assets. The Purchaser expressly understands and agrees that it is not purchasing or acquiring, and the Seller is not selling or assigning, any of the Seller's right, title, and interest in and to the following (collectively, the "Excluded Assets"):

(a)       All cash (with the exception of Customer Deposits), deposit accounts, notes receivable, and any security, lien, claim, remedy, or other right related to any of the foregoing.

2

(b)    The accounts receivable described in the TPD A/R Aging Summary Report attached as Schedule 1.5.

(c)    Except for the rights of the Purchaser to sue for any past or future infringements, misappropriation, or disclosure of any rights in intellectual property as set forth in Section 1.1(b) above, and except for the Preference Actions, all rights to any claims and causes of action of any kind, whether sounding in law or in equity, and all rights in and to any insurance policy or policies covering such claims and the proceeds thereof.

(d)    All insurance policies and all rights and claims thereunder and any proceeds thereof.

(e)    The corporate seals, organizational documents, minute books, stock books, tax returns, books of account or other records having to do with the corporate organization of the Seller, all business records not related to the Purchased Assets including all electronic mail, and all files or records that the Seller is prohibited from disclosing or transferring to the Purchaser under applicable law and is required by applicable law to retain, including any such employee related or employee benefit related files or records, as well as any books and records that the Seller deems necessary for the administration of the Bankruptcy Cases (collectively the "Excluded Books and Records"); provided, however, that the Seller shall provide reasonable access, at the Purchaser's sole cost, to the Purchaser of any Excluded Books and Records retained by the Seller that are related to the Purchased Assets hereunder, but are required to be retained by the Seller pursuant to applicable law or to allow the Seller the use and exercise of any of the Excluded Assets. Notwithstanding the foregoing, or anything to the contrary in this Agreement, the Seller shall not be required to maintain any Excluded Books and Records.

(f)    Except as otherwise provided in Section 1.1(g), the Seller's rights under this Agreement and any ancillary agreements and related documents.

1.3    Assigned Contracts/Leases; Assumed Liabilities.

(a)    Except as may be otherwise agreed between the Purchaser and any given counterparty to an Assumed Contract/Lease (each, a "Counterparty"), the Purchaser shall assume and perform after the Closing Date (as defined below) any and all obligations and liabilities under the Assigned Contracts/Leases, including the obligation to pay the Cure Amounts (as defined below) as provided herein (the "Assumed Liabilities"). With the exception of the Assumed Liabilities, the Purchaser is not assuming any liabilities or other obligations of the Seller, and all such liabilities shall be and remain the responsibility of Seller.

(b)    Except as may be otherwise agreed between the Purchaser and any given Counterparty, the Purchaser shall be obligated to cure all defaults under the Assigned Contracts/Leases, including paying all cure costs required to be paid pursuant to Section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts/Leases (the "Cure Amounts"). The Purchaser shall cure such defaults and pay all such Cure Amounts to the applicable Counterparties as soon as practicable after the Closing Date, or at such other time as may be agreed between the Purchaser and any given Counterparty. The Purchaser shall provide to the Counterparties such adequate assurance of its future performance under the Assigned Contracts/Leases as may be required pursuant to section 365 of the Bankruptcy Code and/or any applicable order of the Bankruptcy Court.

(c)    Schedule 1.1(c) lists the Assigned Contracts/Leases and Cure Amounts. The Seller shall assume, and assign to the Purchaser, the Assigned Contracts/Leases, to the extent that such

3

assumptions and/or assignments are permitted under the Bankruptcy Code and/or applicable law. The Seller shall do so in accordance with the requirements of section 365 of the Bankruptcy Code and as provided herein. Among other things, the Seller shall provide timely and proper written notice of the motion seeking entry of the Sale Order to all Counterparties, and take all other actions necessary or required to cause the Assigned Contracts/Leases to be assumed by the Seller and assigned to the Purchaser pursuant to Section 365 of the Bankruptcy Code, including without limitation: (i) within two (2) business days of the full execution of this Agreement, serving on each Counterparty and potential Counterparty a notice specifically stating that the Seller is or may be seeking the assumption and assignment of that party's executory contract(s) and/or unexpired lease(s) with the Debtor, identifying such executory contract(s) and/or unexpired lease(s), and providing the applicable Cure Amount(s) as reflected in Schedule 1.1(c) hereof or otherwise in the Seller's records, and (ii) as promptly as possible, shall provide notice to the Counterparties of the deadline set by the Bankruptcy Court for objecting to the Cure Amount(s) or any other aspect of the proposed assumption and assignment to the Purchaser; and (iii) taking, as promptly as possible, all other actions reasonably requested by the Purchaser to facilitate any negotiations with the Counterparties and to obtain in the Sale Order findings that the proposed assumption and assignment of the Assigned Contracts/Leases to the Purchaser satisfies all applicable requirements of Section 365 of the Bankruptcy Code. The Sale Order shall provide that as of and conditioned on the occurrence of the Closing, the Seller shall assign to the Purchaser the Assigned Contracts/Leases.

(d)     The Purchaser shall have the right to update Schedule 1.1(c) from time to time by providing written notification to the Seller, up to one (1) business day prior to Closing, of: (i) any executory contracts and/or unexpired leases that Purchaser wishes to add as Assigned Contracts/Leases; and (ii) of any Assigned Contracts/Leases that Purchaser no longer wishes to have assumed and assigned to it, and any such Assigned Contracts/Leases shall be deemed removed from Schedule 1.1(c) and no longer considered Assigned Contracts/Leases. Any such added executory contract or unexpired lease shall be deemed added to Schedule 1.1(c), shall be deemed to be an Assigned Contract/Lease, and shall be assumed by Seller and assigned to Purchaser without any adjustment to the Purchase Price.

(e)     Effective as of the Closing, the Seller shall not have any liability or obligation with respect to the Assumed Liabilities.

1.4     Non-Assignable Assets. Notwithstanding anything in this Agreement to the contrary, to the extent that the assignment of all or any portion of any Purchased Assets is prohibited by law, requires advance notice to a counterparty, or requires the consent of any party that has not been obtained as of the Closing, and which restriction, consent right, or right to advance notice cannot be effectively overridden or canceled by any order of the Bankruptcy Court or any provision of the Bankruptcy Code (each, a "Non-Assignable Asset"):

(a)     this Agreement shall not constitute an assignment or transfer of title to any such Non-Assignable Asset, unless and until any applicable restrictions described above prohibiting the assignment of such Non-Assignable Asset are satisfied or waived, except to the extent set forth in this Section 1.4;

(b)     title to such Non-Assignable Assets shall not be transferred except as provided in Section 1.4(d) , and the Seller shall retain each such Non-Assignable Asset and all of the Liabilities of the Seller related to, or arising from, such Non-Assignable Asset accruing on and after the Closing, and such liabilities shall not be considered Assumed Liabilities;

(c)     the Purchaser and the Seller shall continue to use reasonable best efforts to resolve the applicable restriction to as to permit the transfer of the Non-Assignable Asset to the Purchaser; and

4

(d)      title to each Non-Assignable Asset shall automatically and without further action of the Parties be assigned pursuant to this Agreement to the Purchaser upon satisfaction or waiver of the applicable restrictions affecting such Non-Assignable Asset, and all of the performance obligations of the Seller arising under such Non-Assignable Asset accruing after the date of such assignment shall constitute Assumed Liabilities as of such date.

1.5      Purchase Price.

(a)      The purchase price to be paid by the Purchaser to the Seller for the Purchased Assets at Closing shall be (i) Seven Hundred Thousand Dollars ($700,000), (ii) an additional Fifty Thousand Dollars ($50,000) payable if Closing has not occurred on or before May 15, 2026, (iii) a second additional Fifty Thousand Dollars ($50,000) payable if Closing has not occurred on or before June 15, 2026 and (iv) an amount equal to all accounts receivable as of the Petition Date as described in the TPD A/R Aging Summary Report as of March 16, 2026, attached as Schedule 1.5, to the extent collected by Purchaser estimated to be Three Hundred Fifteen Thousand Dollars ($315,000), which amounts will be paid to Beacon Bank and Trust Company (collectively, the "Purchase Price"). In addition, at the Purchaser's option, the Purchaser may designate as partial additional consideration to be included in the Purchase Price the waiver of unpaid portions of any Bankruptcy Court approved loan made by the Purchaser to Seller.

(b)      The Purchaser has provided a deposit in the amount of ten percent (10%) of the Purchase Price, (the "Deposit") which shall be credited against the Purchase Price and shall be non-refundable except as otherwise provided herein or in an order of the Bankruptcy Court.

(c)      The parties agree that the Purchase Price (and any other relevant items) shall be allocated among the Purchased Assets in accordance with their relative fair market values as determined by the Purchaser in its sole discretion. The Purchaser shall prepare and deliver to the Seller within 45 business days after the Closing Date a schedule (the "Allocation Schedule") allocating the Purchase Price among the applicable assets as of the beginning of the day after the Closing Date. The Allocation Schedule shall be binding on the Parties, and the Parties agree not to take (or permit any of their affiliates to take) any position for any tax purpose or on any tax return (including amended returns and claims for refund) or other information returns that is inconsistent with such Allocation Schedule. Notwithstanding the allocation of the Purchase Price set forth in the Allocation Statement, nothing in the foregoing shall be determinative of values ascribed to the Purchased Assets or the allocation of the value of the Purchased Assets by the Seller for the purpose of his administration of the Bankruptcy Cases.

# Article 2

## Closing and Deliveries

2.1      Closing. Upon the terms and subject to the conditions of this Agreement, the closing of the transactions that are the subject of this Agreement (the "Closing") shall take place remotely via the electronic exchange of documents at 10:00 am local time, as specified below, unless another date, time and/or place is agreed in writing by each of the Parties. The Closing shall occur on or before May 20, 2026 or such later date as is agreed in writing by each of the Parties (the "Closing Date"). The Seller will assign and transfer to the Purchaser all of the Seller's right, title and interest in and to the Purchased Assets (free and clear of all Liens other than liens permitted by Purchaser in writing, and subject to entry of the Sale Order) by delivery of: (i) bill(s) of sale in form and substance reasonably satisfactory to the Purchaser (the "Bill of Sale"), duly executed by the Seller; and (ii) such other good and sufficient instruments of conveyance, assignment and transfer, in form and substance reasonably acceptable to the Parties, as shall be effective to vest in the Purchaser good title to the Purchased Assets (the Bill of Sale together with the other instruments referred to in clause (ii) shall be collectively referred to as the "Assignment Instruments").

5

2.2     Deliveries by Seller.  At the Closing unless otherwise provided herein, the Seller shall deliver or cause to be delivered to the Purchaser (unless previously delivered) each of the following:

(a)     a true and complete copy of the Sale Order, in a form reasonably satisfactory to the Purchaser, which includes approval of the assumption and assignment of the Assigned Contracts/Leases to Purchaser;

(b)     the Bill of Sale and any other applicable Assignment Instruments duly executed by the Seller;

(c)     all other instruments and documents required by this Agreement to be delivered by the Seller to the Purchaser, and such other instruments and documents that the Purchaser may reasonably request to effectuate the transactions contemplated hereby.

All such agreements, documents, and other items shall be in form and substance reasonably satisfactory to the Purchaser.

2.3     Deliveries by Purchaser.  At the Closing, the Purchaser shall deliver or cause to be delivered to the Seller (unless previously delivered) each of the following:

(a)     the Purchase Price (net of the Deposit) by wire transfer of immediately available funds to an account designated by the Seller;

(b)     all other instruments and documents required by this Agreement to be delivered by the Purchaser to the Seller, and such other instruments and documents that the Seller may reasonably request to effectuate the transactions contemplated hereby.

All such agreements, documents, and other items shall be in form and substance reasonably satisfactory to the Seller.

# Article 3

## Representations and Warranties of Purchaser

The Purchaser represents and warrants to the Seller that the statements contained in this Article 3 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement).

3.1     Organization of Purchaser.  The Purchaser is a limited liability company duly formed, validly existing, and in good standing under the laws of the State of Delaware.

3.2     Authorization of Transaction.

(a)     The Purchaser has full power and authority to execute and deliver this Agreement and to perform the Purchaser's obligations hereunder.  The execution and delivery by the Purchaser of this Agreement and the performance by the Purchaser of the transactions contemplated hereby and thereby have been duly approved by all requisite action of the Purchaser.  Assuming the due authorization, execution and delivery of this Agreement, this Agreement constitutes the valid and legally binding obligation of Purchaser, enforceable against the Purchaser in accordance with its terms, except as such enforceability

04/29/2026
LEGAL\147614111\8 6019267/00607227

may be limited by bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors generally and by the availability of equitable remedies.

(b)    Except as required to comply with any applicable federal and/or state laws, the Purchaser is not required to give any notice to, make any filing with, or obtain any consent of any governmental authority or any other person or entity in order to consummate the transactions contemplated by this Agreement.

3.3    Non-contravention.  Neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will (i) violate or conflict with any law or court order to which the Purchaser is subject, (ii) violate any provision of the organizational documents of the Purchaser, or (iii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any contract to which the Purchaser is a party or by which it is bound or to which any of its assets is subject.

3.4    Ability to pay Purchase Price.  Purchaser has, or will have at the Closing, sufficient liquid assets to enter into the transactions contemplated herein and to pay the cash portion of the  Purchase Price at the Closing.

## Article 4

## Representations and Warranties of Seller

4.1    Authority.  The Seller is the debtor and debtor-in-possession in the Bankruptcy Case. Subject to entry of the Sale Order, the Seller has the authority to enter into this Agreement and to consummate the transactions contemplated hereby.

4.2    No Representations. EXCEPT AS EXPRESSLY PROVIDED HEREIN OR IN THE SALE ORDER, THE PURCHASER AGREES AND ACKNOWLEDGES THAT THE TRANSFER OF THE ASSETS IS MADE PURSUANT TO ORDER OF THE BANKRUPTCY COURT AND IS MADE "AS IS" AND "WHERE IS," AND ACKNOWLEDGES AND AGREES THAT EXCEPT AS EXPRESSLY PROVIDED HEREIN, THE SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PURCHASED ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE TITLE OR CONDITION OF THE PURCHASED ASSETS, OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR ANY BUSINESS PROSPECTS, OR VALUATION OF THE PURCHASED ASSETS, OR THE COMPLIANCE OF THE PURCHASED ASSETS IN THEIR CURRENT OR FUTURE STATE WITH APPLICABLE LAWS OR ANY VIOLATIONS THEREOF.  THE PURCHASER FURTHER ACKNOWLEDGES THAT THE SELLER SHALL DELIVER TO THE PURCHASER ALL OF THE PURCHASED ASSETS IN THE SELLER'S POSSESSION; BUT THAT THE SELLER MAY NOT HAVE POSSESSION OF ALL OF THE PURCHASED ASSETS, AND THAT TO THE EXTENT THAT THE SELLER IS NOT IN POSSESSION OF ANY ASSETS SOLD HEREUNDER, THE PURCHASER WILL HAVE SOLE RESPONSIBILITY TO OBTAIN POSSESSION OF SUCH ASSETS.

04/29/2026
LEGAL\I 14761411\8 6019267/00607227

# Article 5

## Bankruptcy Court Matters

5.1     Bankruptcy Court Approval.

(a)     This Agreement is subject to approval by the Bankruptcy Court. Each Party's obligations under this Agreement and in connection with the transactions contemplated hereby are subject to, among other things, entry of the Sale Order, and to the terms of the Sale Order and any other orders of the Bankruptcy Court applicable to the transactions contemplated in this Agreement. Nothing in this Agreement shall require the Seller or its Affiliates to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other fiduciary duty to the Bankruptcy Court or its stakeholders.

(b)     The "Sale Order" shall be an order of the Bankruptcy Court in a form reasonably acceptable to both the Purchaser and the Seller. Subject to the Purchaser being designated as the Successful Bidder, the Seller shall promptly, and no later than May 19, 2026, unless Purchaser agrees in writing to a later date, obtain entry of the Sale Order approving this Agreement and authorizing the transactions contemplated herein.

(c)     The Parties covenant and agree that they shall cooperate with the one another as necessary to obtain entry of the Sale Order, including without limitation by furnishing information or documents to Seller to satisfy the requirements for obtaining Bankruptcy Court approval of the Sale Order.

5.2     Alternative Transaction.

(a)     An "Alternative Transaction" is defined as a transaction, or series of related transactions, pursuant to which the Seller accepts a bid to acquire all or substantially all of the Purchased Assets from a party other than the Purchaser, in accordance with the Bidding Procedures Order or otherwise. For the sake of clarity, an "Alternative Transaction" does not mean the sale of goods or services of the Seller conducted in the ordinary course of business.

(b)     The Parties acknowledge that this Agreement and the sale of the Purchased Assets are subject to higher and better bids and Bankruptcy Court approval. The Parties acknowledge that the Seller must take reasonable steps to demonstrate that it has sought to obtain the highest or otherwise best price for the Purchased Assets, including giving notice thereof to the creditors of the Seller and other interested parties, providing information about the Seller's assets to prospective bidders, entertaining higher and better offers from such prospective bidders, and, in the event that additional qualified prospective bidders desire to bid for the Purchased Assets, conducting an Auction.

(c)     Notwithstanding any other provision of this Agreement to the contrary, Purchaser acknowledges that the Seller and its advisors are and may continue soliciting and/or responding to inquiries, proposals or offers for the Purchased Assets and may furnish any information with respect to, or assist or participate in, or facilitate in any other manner, any effort or attempt by any Person to do or seek to do any of the foregoing in connection with any Alternative Transaction.

(d)     Break-Up Fee; DIP Loan as Additional Consideration. The Seller acknowledges that the Purchaser has expended considerable time and expense in connection with this Agreement and the negotiation thereof. In consideration therefor, the Seller shall seek Bankruptcy Court approval of (i) a break-up fee in the amount of $24,500 (the "Break-Up Fee") to be paid to the Purchaser in the event that the Sale fails to close due to the Seller's consummation of an Alternative Transaction, and (ii) the right to

04/29/2026
LEGAL\1147614 11\8 6019267/00607227

include the waiver of the unpaid portion of any Bankruptcy Court approved loan made by Purchaser to the Seller as part of the consideration for the Purchaser's purchase of the Purchased Assets hereunder.

5.3     Adequate Assurance of Future Performance.  If applicable, the Purchaser shall provide adequate assurance of future performance as required under Section 365 of the Bankruptcy Code for the Assigned Contracts/Leases.  Purchaser agrees that it will take actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assigned Contracts/Leases, such as furnishing affidavits, non-confidential financial information and other documents or information for filing with the Bankruptcy Court and making Purchaser's advisors available to testify before the Bankruptcy Court.

5.4     Cure Amount.  Subject to entry of the Sale Order and consummation of the Closing, the Purchaser shall, on the Closing, pay the Cure Amounts and cure any and all other defaults and breaches under the Assigned Contracts/Leases so that such contracts and/or leases may be assumed by the Seller and assigned to the Purchaser in accordance with the provisions of Section 365 of the Bankruptcy Code and this Agreement.

5.5     Sale Free and Clear.  The Sale Order shall provide for the sale and transfer to the Purchaser of the Purchased Assets free and clear of any and all liens, claims, liabilities, and interests of any kind, with the sole exception of the Assumed Liabilities, to the greatest extent possible under section 363(f) of the Bankruptcy Code.  As of the Closing Date, the Purchased Assets shall be transferred to the Purchaser free and clear of any and all liens, claims, liabilities, and interests of any kind, with the sole exception of the Assumed Liabilities.

5.6     Seller's Duty to Consult with Purchaser.  Seller shall provide Purchaser, at least two (2) business days in advance of filing with the Bankruptcy Court a draft of any motions, orders, or other pleadings that Seller proposes to file with the Bankruptcy Court seeking approval of this Agreement, excluding those already filed as of the execution of this Agreement (if any).  Seller shall reasonably cooperate with the Purchaser, and consider in good faith the view of the purchaser, with respect to all such filings.

# Article 6

## Pre-Closing Covenants

6.1     Closing Efforts.  The Parties will cooperate and use all commercially reasonable efforts to take all actions and to do all things necessary, proper, or advisable in order to consummate and make effective the transactions contemplated by this Agreement, including without limitation by taking any and all steps necessary to avoid or eliminate any legal impediments or objections, if any, that may be asserted with respect to the Sale by any party, including any governmental authority, so as to enable the Parties to close the Sale as promptly as practicable.

6.2     Access and Cooperation.  From the date hereof through the Closing Date, the Seller shall respond to reasonable requests of the Purchaser and its representatives (including its legal advisors, financing sources, financial advisors and accountants) for access, during normal business hours and upon reasonable advance notice, to the properties, books, records and personnel of the Seller related to the Purchased Assets or the Assumed Liabilities; provided, however, that in no event shall the Seller be obligated to provide (i) access or information that would be in violation of applicable law, (ii) bids, letters of intent, expressions of interest, or other proposals received from others in respect of the business of the Seller or in connection with the transactions contemplated hereby or otherwise, and information and

9

analyses relating to such communications, (iii) any information that constitutes attorney work product or that would violate any legal privilege available to the Seller or any of its affiliates relating to such information or would cause such the Seller or any of its affiliates to breach a confidentiality obligation to which it is bound; provided, however, that the Seller and its affiliates have used reasonable best efforts to obtain any necessary third party consents to such inspection or disclosure, or (iv) personnel records of the Seller or any of its affiliates relating to individual performance or evaluation records, medical histories or other information the disclosure of which is prohibited by applicable law. In connection with such access, the Purchaser's representatives shall cooperate with the Seller's representatives and shall use their reasonable best efforts to minimize any disruption of the Seller's administration of the Bankruptcy Case.

6.3     Notice of Developments. If the Purchaser become aware prior to Closing of any event, fact or condition or nonoccurrence of any event, fact or condition that may constitute a breach of any representation, warranty, covenant or agreement of the Purchaser or may constitute a breach of any representation or warranty of the Purchaser if such representation or warranty were made on the date of the occurrence or discovery of such event, fact or condition or on the Closing Date, then the Purchaser will promptly provide the Seller with a written description of such fact or condition.

## Article 7

### Post-Closing Covenants

7.1     General. In case at any time after the Closing any further action is necessary to carry out the purposes of this Agreement, the Seller will take such further action (including the execution and delivery of such further instruments and documents) as the Purchaser reasonably may request, all at the sole cost and expense of the Purchaser. The Seller acknowledges and agrees that, from and after the Closing, the Purchaser will be entitled to possession of all documents, books, records (including Tax records), agreements and financial data of any sort relating to the business of Seller. Notwithstanding the foregoing, the Purchaser shall provide the Seller with reasonable access to all documents, books, records (including tax records), agreements and financial data of any sort relating to the business of the Seller as may be necessary for the Seller's administration of the Bankruptcy Case until the Bankruptcy Case is closed.

## Article 8

### Closing Conditions

8.1     Conditions Precedent to Performance by the Seller and the Purchaser. The respective obligations of the Seller and the Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction or waiver, on or prior to the Closing Date, of the following conditions:

(a)     Bankruptcy Matters. (i) The Bankruptcy Court shall have entered the Sale Order by May 19, 2026, and (ii) the Sale Order shall become final and non-appealable and shall not have been stayed, vacated, modified or supplemented without the prior written consent of the Purchaser.

(b)     No Order. No order, statute, rule, regulation, executive order, injunction, stay, decree, directive, or restraining order shall have been enacted, entered, promulgated or enforced by any court of competent jurisdiction or Governmental Authority that would (i) prevent the consummation of any of the Transactions contemplated by this Agreement or (ii) cause any of the transactions contemplated by this Agreement to be rescinded following consummation, nor shall any such order, statute, rule, regulation, executive order, injunction, stay, decree, directive, or restraining order be in effect. No action shall be pending before any Governmental Authority or before any arbitral body wherein an unfavorable injunction, judgment, order, decree, ruling, directive or charge would (x) prevent consummation of any of the

10

transactions contemplated by this Agreement or (y) cause any of the transactions contemplated by this Agreement to be rescinded following consummation.

8.2 Conditions to Obligations of Purchaser. The obligations of the Purchaser to consummate the Closing shall be subject to the satisfaction (or waiver by the Purchaser) on or prior to the Closing Date, of each of the following conditions:

(a) Representations and Warranties. All representations and warranties made by the Seller in Article 4 of this Agreement shall be true and correct in all respects on and as of the Closing Date as if again made by the Seller on and as of such date (or, if made as of a specific date, at and as of such date).

(b) Performance of the Obligations of Seller. The Seller shall have performed in all material respects all material obligations required under this Agreement to be performed by it on or before the Closing Date; and the Purchaser shall have received a certificate dated as of the Closing Date and signed by an authorized signatory of the Seller to that effect.

(c) Seller Deliveries. The Seller shall have delivered, and the Purchaser shall have received, all of the Purchased Assets and each of the items set forth in Section 2.2 of this Agreement.

(d) Legal Proceedings. No legal proceeding shall have been commenced against the Purchaser or the Seller, which would prevent the Closing. No Order shall have been issued by any governmental authority, and be in effect, which has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of the transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(e) Purchaser shall have entered into an employment agreement with Vanessa Kreckel on terms acceptable to Purchaser including non-compete provisions upon termination of such employment which are enforceable under applicable law.

The foregoing conditions in this Section 8.2 are for the sole benefit of the Purchaser and may be waived by the Purchaser, in whole or in part, at any time and from time to time in its sole discretion. The failure by the Purchaser prior to Closing to exercise any of the foregoing rights shall be deemed a waiver of any such rights.

8.3 Conditions to Obligations of Seller. The obligations of the Seller to consummate the Closing shall be subject to the satisfaction (or waiver by the Seller) on or prior to the Closing Date, of the following conditions:

(a) Representations and Warranties. All representations and warranties made by the Purchaser in Article 3 of this Agreement shall be true and correct in all material respects on and as of the Closing Date as if again made by the Purchaser on and as of such date (or, if made as of a specific date, at and as of such date).

(b) Performance of the Obligations of Purchaser. The Purchaser shall have performed in all material respects all material obligations required under this Agreement to be performed by it on or before the Closing Date (except with respect to the obligation to pay the Purchase Price in accordance with the terms of this Agreement, which obligation shall be performed in all respects as required under this Agreement), and the Seller shall have received a certificate dated as of the Closing Date and signed by an authorized signatory of the Purchaser to that effect.

11

(c)     Purchaser's Deliveries. The Purchaser shall have delivered, and the Seller shall have received, all of the items set forth in Section 2.3 of this Agreement.

The foregoing conditions in this Section 8.3 are for the sole benefit of the Seller and may be waived by the Seller, in whole or in part, at any time and from time to time in its sole discretion. The failure by the Seller prior to Closing to exercise any of the foregoing rights shall be deemed a waiver of any such rights.

## Article 9

## Termination

9.1     Termination of Agreement. This Agreement may be terminated at any time prior to the Closing Date as follows:

(a)     By the mutual written consent of the Purchaser and the Seller.

(b)     By either the Purchaser or the Seller upon written notice given to the other, if the Bankruptcy Court or any other governmental authority shall have issued an order, decree or ruling or taken any other action (which order, decree, ruling or other action the parties hereto shall use their reasonable efforts to prevent the entry of and remove) that permanently restrains, enjoins or otherwise prohibits the consummation of the Sale, and such order, decree, ruling or other action shall have become final and non-appealable.

(c)     By the Seller upon written notice given to the Purchaser, if the Purchaser shall have breached or failed to perform in any material respect any of its material representations, warranties or covenants contained in this Agreement, which breach or failure to perform (i) would result in a failure of a condition set forth in Section 8.3 and (ii) cannot be cured within five (5) Business Days after the Seller provides written notice to Purchaser of such breach.

(d)     By the Purchaser upon written notice given to the Seller, if the Seller shall have breached or failed to perform in any material respect any of its material representations, warranties or covenants contained in this Agreement, which breach or failure to perform (i) would result in a failure of a condition set forth in Section 8.2 and (ii) cannot be cured within five (5) Business Days after the Purchaser provides written notice to the Seller of such breach.

(e)     By the Purchaser if Closing has not been completed on or before June 1, 2026 or such later date agreed to in writing by the Purchaser.

(f)     By the Purchaser or the Seller upon written notice given to the other if the Seller consummates an Alternative Transaction.

(g)     Any party seeking to invoke its rights to terminate this Agreement shall give written notice thereof to the other party or parties specifying the provision hereof pursuant to which such termination is made and the effective date of such termination being the date of such notice.

9.2     Effect of Termination. If this Agreement is terminated by either party in accordance with and pursuant to Section 9.1 then all rights and obligations of the parties under this Agreement shall terminate; provided, however, that nothing herein shall relieve any party from liability for any breach of this Agreement prior to such termination; provided, further, that if this Agreement is terminated by the Seller pursuant to Section 9.1(c), then Purchaser shall forfeit and the Seller shall retain the Deposit. Upon termination of this Agreement (other than with respect to a termination by the Seller Pursuant to Section

12

9.1(c)), the Deposit shall not become property of the Seller, and the Seller shall be obligated to return the Deposit to the Purchaser.

9.3     Break-Up Fee. The Break-Up Fee shall be payable to the Purchaser if either the Purchaser or the Seller terminates this Agreement pursuant to Section 9.1(f). In this event, the Break-Up Fee shall be payable to the Purchaser, provided that the Break-Up Fee shall be paid to the Purchaser solely upon the consummation of such Alternative Transaction and from the proceeds of such Alternative Transaction. The Seller and the Purchaser agree that the Break-Up Fee is a material inducement to the Purchaser to enter into this Agreement, and that the Break-Up Fee shall not be subject to any defense, claim, counterclaim, offset, recoupment, or reduction of any kind whatsoever

# Article 10

## Miscellaneous

10.1     Survival. Except as expressly set forth in this Agreement to the contrary, all representations and warranties of the Purchaser and the Seller, respectively, contained in this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the Purchaser and the Seller, respectively, for purposes of Closing; provided, however, the Parties acknowledge and agree that all such representations and warranties shall expire, and be of no further force or effect upon the Closing, and neither the Purchaser nor the Seller shall have any liability in respect of any breach thereof upon the Closing.

10.2     No Third-Party Beneficiaries. Except as specifically provided in this Agreement, this Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

10.3     Entire Agreement. This Agreement (including the documents referred to herein) constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

10.4     Succession and Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the Purchaser and the Seller; provided, however, that the Purchaser may (a) assign any or all of its rights and interests hereunder to one or more of its affiliates and designate one or more of its affiliates to perform its obligations hereunder (in any or all of which cases the Purchaser nonetheless shall remain responsible for the performance of all of its obligations hereunder), (b) assign its rights under this Agreement for collateral security purposes to any party providing financing to the Purchaser, its subsidiaries or affiliates (including by the granting of liens in respect of its rights and interests hereunder to any such lenders (and any agent for such lenders)), and the Parties consent to any exercise by such lenders (and such agent) of their rights and remedies with respect to such collateral, or (c) assign its rights under this Agreement to any party that acquires the Purchaser or any of its assets.

10.5     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and shall become effective when one or more such counterparts has been signed by each of the Parties and delivered to the other Parties. Counterparts may be delivered via facsimile, electronic mail (including portable

13

04/29/2026
LEGAL\1147614111\8 6019267/00607227

document format (PDF)) or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com.

10.6  Titles and Headings. Titles and section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

10.7  Notices. All notices, requests, demands, claims, and other communications hereunder will be in writing via electronic mail and shall be deemed duly given when sent to the intended recipient as set forth below:

| | |
|---|---|
| If to the Seller: | TPD Design House, LLC<br>Attn: Vanessa Kreckel<br>Email: vanessa@tpddesignhouse.com |
| with a copy to: | David B. Smith, Esq.<br>Email: dsmith@skhlaw.com |
| If to the Purchaser: | Oslo Blue, LLC<br>Attn: Scott Tarte<br>Attn: Evan Tarte<br>Email: tartescott@gmail.com<br>Email: evanmtarte@gmail.com |
| with a copy to: | John T. Carroll, III, Esq.<br>Simon E. Fraser, Esq.<br>Email: jcarroll@cozen.com<br>Email: sfraser@cozen.com |

10.8  Governing Law. This Agreement and any claim, controversy or dispute arising out of or related to this Agreement, any of the transactions contemplated hereby, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties, whether arising in contract, tort, equity or otherwise, shall be governed by and construed in accordance with the domestic laws of the Commonwealth of Pennsylvania (including in respect of the statute of limitations or other limitations period applicable to any such claim, controversy or dispute), without giving effect to any choice or conflict of law provision or rule (whether of the Commonwealth of Pennsylvania or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the Commonwealth of Pennsylvania.

10.9  Amendments and Waivers. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Purchaser and the Seller. No waiver by any Party of any provision of this Agreement or any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party against whom the waiver is to be effective nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

10.10  Specific Performance. Each Party agrees that the other Parties will be entitled to obtain an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and its terms and provisions, in addition to any other remedy to which it may be entitled, at law or in equity, except as otherwise provided in this Agreement.

04/29/2026
LEGAL\1 1476141 1\8 6019267/00607227

10.11    Severability. The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof; provided, however, that if any provision of this Agreement, as applied to any Party or to any circumstance, is adjudged by a court of competent jurisdiction not to be enforceable in accordance with its terms, the Parties agree that such court making such determination will have the power to modify the provision in a manner consistent with its objectives such that it is enforceable, or to delete specific words or phrases, and in its reduced form, such provision will then be enforceable and will be enforced.

10.12    Expenses. Except as otherwise expressly provided in this Agreement, each Party will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby.

10.13    Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. References in this Agreement to any gender include references to all genders, and references to the singular include references to the plural and vice versa. The words "include", "includes" and "including" when used in this Agreement shall be deemed to be followed by the phrase "without limitation" or "but not limited to". Unless the context otherwise requires, references in this Agreement to Articles, Sections, Schedules and Exhibits shall be deemed references to Articles and Sections of, and Schedules and Exhibits to, this Agreement. Unless the context otherwise requires, the words "hereof", "hereby" and "herein" and words of similar meaning when used in this Agreement refer to this Agreement in its entirety and not to any particular Article, Section or provision of this Agreement. When calculating the period of time before which, within which or following which any act is to be done or any step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall not be calculated as the first day of such period of time. If the last day of such period is a non-business day, the period in question shall end on the next succeeding business day.

10.14    Incorporation of Exhibits. The Exhibits and Schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

10.15    Waiver of Jury Trial. EACH OF THE PARTIES WAIVES THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OR RELATED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR ANY AFFILIATE OF ANY OTHER SUCH PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS OR OTHERWISE. THE PARTIES AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT.

10.16    Exclusive Venue. THE PARTIES AGREE THAT ALL DISPUTES, LEGAL ACTIONS, SUITS AND PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT MUST BE

15

04/29/2026
LEGAL\147614111\8 6019267/00607227

BROUGHT EXCLUSIVELY IN A FEDERAL DISTRICT COURT LOCATED IN THE EASTERN DISTRICT OF PENNSYLVANIA OR THE BANKRUPTCY COURT (COLLECTIVELY THE "DESIGNATED COURTS").  EACH PARTY HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE DESIGNATED COURTS. NO LEGAL ACTION, SUIT OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN ANY OTHER FORUM. EACH PARTY HEREBY IRREVOCABLY WAIVES ALL CLAIMS OF IMMUNITY FROM JURISDICTION AND ANY OBJECTION WHICH SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING IN ANY DESIGNATED COURT, INCLUDING ANY RIGHT TO OBJECT ON THE BASIS THAT ANY DISPUTE, ACTION, SUIT OR PROCEEDING BROUGHT IN THE DESIGNATED COURTS HAS BEEN BROUGHT IN AN IMPROPER OR INCONVENIENT FORUM OR VENUE.  EACH OF THE PARTIES ALSO AGREES THAT DELIVERY OF ANY PROCESS, SUMMONS, NOTICE OR OTHER DOCUMENT TO A PARTY HEREOF IN COMPLIANCE WITH SECTION 10.7 OF THIS AGREEMENT SHALL BE EFFECTIVE SERVICE OF PROCESS FOR ANY ACTION, SUIT OR PROCEEDING IN A DESIGNATED COURT WITH RESPECT TO ANY MATTERS TO WHICH THE PARTIES HAVE SUBMITTED TO JURISDICTION AS SET FORTH ABOVE.

*[Remainder of Page Intentionally Left Blank]*

04/29/2026
LEGAL\1 147614 11\8 6019267/00607227

IN WITNESS WHEREOF, the Parties hereto have executed this Asset Purchase Agreement as of the date first above written.

PURCHASER:

By: Scott Tarte
Title: Sole Member

SELLER:

By: Vanessa Kreckel
Title: Sole Member

LEGAL\147614111\8 6019267/00607227
04/29/2026

## Schedule 1.1(c)

## Assigned Contracts/Leases

# ACCEPTED - Customer Contracts

| Customer | Legal Counterparty | Address | Nature of Contract | Start Date | Duration | Contract Account Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| ██ | ██ | ██ | Master Services Agreement | 2/7/2025 | 24 months | NA | $0 - None |
| ██ | ██ | ██ | Master Services Agreement | 7/16/2025 | 24 months | ██ | $0 - None |
| ██ | ██ | ██ | SOW | 6/6/2025 | Ongoing | NA | $0 - None |
| ██ | ██ | ██ | SOW | 2/9/2026 | Ongoing | NA | $0 - None |
| ██ | ██ | ██ | SOW | 2/24/2025 | Ongoing | NA | $0 - None |
| ██ | ██ | ██ | SOW | 8/1/2025 | Ongoing | NA | $0 - None |
| ██ | ██ | ██ | SOW | 1/13/2026 | Ongoing | NA | $0 - None |
| ██ | ██ | ██ | SOW | 7/30/2025 | Ongoing | NA | $0 - None |

## ACCEPTED - Service & Insurance Contracts

| Vendor | Legal Counterparty | Address | Nature of Contract | Start Date | Duration | Contract Account Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| Blue Space Techologies | Bluspace Tech, LLC | 333 Fancy Hill Rd, Boyertown, PA 19512 | IT infrastructure support including server maintenance, cybersecurity, cloud-based MSFT 365 application, mobile management, and helpdesk | 3/20/2023 | Monthly | CBJCHBCAABA AIYsrtpGhhqPFtc mm4lrE39Iek2I2g _zu | $0 - None |
| ADP | ADP TotalSource FL XVII, Inc. | 10200 Sunset Drive, Miami, FL 33173 | Payroll and benefits processing services | 6/23/2025 | Monthly | LMOC6JB0T | $0 - None |
| Hartford | Hartford Insurance Company of Illinois | One Hartford Plaza, Hartford, CT 06155 | Business insurance policy, including general liability and asset & property protection | 4/29/2025 | 12 months | 01 WEC BS3FLU | $0 - None |
| Phaze 2 Technologies | esp Delivers LLC | 133 Heather Road, Bala Cynwyd, PA 19004 | Phone Services. $248.55 a month per revised terms | 4/19/2022 | 36 months | #25045-R4 | $248.55 |

## ACCEPTED - Capital Lease Contracts

| Vendor | Legal Counterparty | Address | Nature of Contract | Start Date | Duration | Contract Account Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| Geneva Capital | Geneva Capital, LLC | 1311 Broadway Street Alexandria, MN 56308 | Equipment financing agreement for Epilogue Laser Cutter | 8/20/2023 | 37 months | 52199-04 | $0 - None |
| First Citizens | First-Citizens Bank & Trust Company | 239 Fayetteville St Raleigh, NC 27601 | Equipment financing agreement for Coldesi 300H3F Flatbed 3 Head UV Printer | 10/15/2024 | 60 months | #ME02106060 | $0 - None |
| DLL | De Lage Landen Financial Services, Inc. | 1111 Old Eagle School Road, Wayne, Pennsylvania 19087 | Equipment financing agreement for 6 Apple / Studio Displays 27", 5 MB Pro '16/M3 Max/48GB/1TB, 11 Apple Keyboards, 6 Apple Accessories | 6/21/2024 | 36 months | 500-50634150 | $8,614.87 |
| **Landlord | West Wayne Avenue Ventures LLC | 120 Pennsylvania Avenue, Malvern, PA 19355 | Real Property Lease | 5/5/2021 | 10 years | | $0 [Landlord has agreed to waive arrears; Scott Tarte has agreed to provide landlord with a personal guaranty as adequate assurance of future performance] |

# ACCEPTED - SaaS Contracts

| Vendor | Legal Counterparty | Address | Nature of Contract | Start Date | Duration | Contract Account Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 1Password | AgileBits Inc. | 4711 Yonge Street, 10th Floor Toronto, Ontario M2N 6K8 Canada | Platform to store, generate, and autofill passwords and other sensitive data, along with tools for access management | 5/21/2016 | Monthly | NA | $0 - None |
| AWS | Amazon Web Services, Inc. | 410 Terry Avenue North, Seattle, WA 98109-5210, USA | Cloud infrastructure services including compute, storage, and databases | NA | Monthly | NA | $0 - None |
| Adobe | Adobe Inc. | 251 Little Falls Drive, Wilmington, DE 19808, USA | Creative software suite for design, editing, and digital content production | 5/3/2023 | Monthly | D1D2991F760D2 CA2CE0A | $0 - None |
| Google Workspace | Google LLC | 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA | Cloud productivity suite including email, storage, and collaboration tools | 7/29/2007 | Monthly | Customer ID C01r21pr8 | $0 - None |
| Microsoft 365 | Microsoft Corporation | One Microsoft Way, Redmond, WA 98052, USA | Enterprise productivity and collaboration software including Office and Teams | NA | Monthly | NA | $0 - None |
| Box | Box, Inc. | 900 Jefferson Avenue, Redwood City, CA 94063, USA | Cloud content management and secure file sharing platform. Business Plus Account with Governance for 5 licenses, billed annually at a rate of 175.00 USD | 8/7/2019 | Monthly | Account Number B01333789 | $0 - None |
| Dialpad | Dialpad, Inc. | 3001 Bishop Drive, Suite 300, San Ramon, CA 94583, USA | Cloud-based business communications including VoIP, messaging, and video | NA | Monthly | NA | $0 - None |
| Zoom | Zoom Communications, Inc. | 55 Almaden Blvd, San Jose, CA 95113, USA | Video conferencing and virtual meeting platform for communication | 3/25/2020 | Monthly | Account Number 114064465 | $0 - None |

# ACCEPTED - SaaS Contracts

| Vendor | Legal Counterparty | Address | Nature of Contract | Start Date | Duration | Contract Account Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| Mailchimp | The Rocket Science Group LLC | 675 Ponce de Leon Ave NE, Atlanta, GA 30308, USA | Email marketing and automation platform for campaigns and engagement | NA | Monthly | NA | $0 - None |
| Flywheel | Flywheel Software, Inc. | 1405 Harney St, Omaha, NE 68102, USA | Managed WordPress hosting platform for performance and security | NA | Monthly | NA | $0 - None |
| DesktopShipper | DesktopShipper, LLC | 3860 SE Naef Rd Portland, OR 97268 USA | Shipping and fulfillment automation software for logistics operations | NA | Monthly | NA | $0 - None |
| Beanstalk | Wildbit, LLC | 225 Chestnut St, Philadelphia, PA 19106, USA | Git-based code hosting and deployment platform for development workflows | NA | Monthly | NA | $0 - None |

Case 26-11073-djb   Doc 120   Filed 05/22/26   Entered 05/22/26 10:19:24   Desc Main Document   Page 23 of 28

## Schedule 1.1(f)

## Avoidance Actions to be Acquired by Purchaser

## **Debtor's Disclosure of Payments Made Within 90 days of the Petition Date in the Aggregate Amount of at least $7,575**

| Identity of Payee | Being Acquired by Purchaser |
| --- | --- |
| ADP | Yes |
| Amazon | Yes |
| Announcement Converters, Inc | Yes |
| Berkovitz and Bouskila LLC (SAMSON) | No |
| Brenton Niccolo | Yes |
| Centennial Capital | No |
| Conlin's Copy Center | Yes |
| Faire | Yes |
| FedEx | Yes |
| Four Seasons Resort Mallorca | Yes |
| GALLAGHER LEADER | Yes |
| High Life Tech | Yes |
| Hopkins Schafkopf (Marc Pan) | No |
| Jacob Z. Weinstein (HMFCG) | No |
| JP Morgan | No |
| Kelli Haugh | Yes |
| Lightyear Business Advisors - Andrew Berg | Yes |
| Montgomery McCraken | No |
| Pemm Capital LLC | No |
| Portnoff Law Associates | No |
| Salil Zaveri | No |
| Surefold Company Inc | Yes |
| TLF | Yes |

| | |
|---|---|
| TUCKER ALBIN | No |
| Uline | Yes |
| Vaishali Gor | No |
| West Wayne Avenue Ventures | Yes |
| Xena Productions Ltd | Yes |
| Xerox Corporation | Yes |

## Schedule 1.5

### TPD A/R Aging Summary Report as of March 16, 2026

LEGAL\147614118 6019267/00607227
05/22/2026

## A/R Aging Summary Report
### TPD Design House, LLC
As of Mar 16, 2026

| | CURRENT | 1 - 30 | 31 - 60 | 61 - 90 | 91 AND OVER | Total |
|---|---|---|---|---|---|---|
| Customer 1 | 12,750.00 | | | | | $12,750.00 |
| Customer 2 | | | | | 370.00 | 370.00 |
| Customer 3 | | 1,663.88 | | | | 1,663.88 |
| Customer 4 | | | | | 22,660.40 | 22,660.40 |
| Customer 5 | 3,750.00 | | | | | 3,750.00 |
| Customer 6 | | 992.46 | | | | 992.46 |
| Customer 7 | | | 7,052.86 | | | 7,052.86 |
| Customer 8 | | 449.29 | | 1,112.57 | | 1,561.86 |
| Customer 9 | | 7,963.12 | | | | 7,963.12 |
| Customer 10 | | 5021.1 | 25,937.43 | | 143,369.77 | 174,328.30 |
| Customer 11 | | | 15,000.00 | | | 15,000.00 |
| Customer 12 | | | | 2,213.58 | 2,454.68 | 4,668.26 |
| Customer 13 | 5,064.36 | | | | | 5,064.36 |
| Customer 14 | | 1,896.45 | | | | 1,896.45 |
| Customer 15 | | | 39,170.72 | | | 39,170.72 |
| Customer 16 | | | | | -97,948.18 | -97,948.18 |
| Customer 17 | | | | | 12,004.70 | 12,004.70 |
| Customer 18 | | | 3,000.00 | | | 3,000.00 |
| Customer 19 | | 3,500.00 | | | | 3,500.00 |
| Customer 20 | | | 4,711.37 | | | 4,711.37 |
| Customer 21 | | | | | 1,213.62 | 1,213.62 |
| Customer 22 | | 2,575.00 | | | | 2,575.00 |
| Customer 23 | | | | | 35,608.10 | 35,608.10 |
| Customer 24 | | 8,392.74 | | | | 8,392.74 |
| Customer 25 | | | | | 2,665.84 | 2,665.84 |
| Customer 26 | 16,329.32 | | | | | 16,329.32 |
| Customer 27 | | | | | 1,052.50 | 1,052.50 |
| Customer 28 | | | 1.00 | | | 1.00 |
| Customer 29 | | 22,937.77 | | | | 22,937.77 |
| TOTAL | 25,143.68 | 68,141.81 | 94,873.38 | 3,326.15 | 123,451.43 | 314,936.45 |